Case No. 237934 Good morning. Good morning. May it please the Court, I'm Tammy Lynn for Mr. Carew. This case presents various procedural questions, but the heart of the matter here is unremedied racial discrimination against black men, injury selection at the trial of a black man, Mr. Carew. And I just want to note two quick things. The finding of racial discrimination here is not the issue. That was determined in Mr. Carew's favor repeatedly by the State Courts and the District Court properly afforded deference to that finding and is fully supported by the record. And then the other thing is, it's our position that no overview applies to the merits claim here, and again, the failure to provide a remedy for the Batson error. And that is because no State Court adjudicated that specific claim on merits. Could you explain to me what is the difference in practical terms or in any terms at all between an argument that there was a Batson error that you can only reach through ineffective assistance of counsel and a claim of ineffective assistance of counsel where to find the person, the lawyer was ineffective, you'd have to establish that there was a Batson error. How are those two things different if they are? Yes, sir. I think there is a distinction. It is quite convoluted in my opinion. But the way I look at the distinction is we have the court's error here, and the court's error is what we are presenting as the claim for needless relief, which is that the court had an obligation under Batson to afford a remedy once it determined, as it did, that there was racial discrimination by the prosecutor against the jurist. So does that mean that you don't need to rely on ineffective assistance of counsel? Well, so that argument was found to be unpreserved by the State Courts, and so the district court found it procedurally defaulted. So that's why you need to allege ineffective assistance of counsel. That is a way, a portal, to get you to the Batson claim. Okay, now apart from any question of deference, how can it be ineffective assistance of counsel for a lawyer to make, if that's what the lawyer did, a strategic decision that I like this jury, I don't want to mess with this jury, so I'm just going to let this lie. I have a couple of responses to that. First, I don't think that the record supports that counsel did want the jury that he had because counsel wanted to... Would you just answer that question? Yes, I'm sorry if that's not... Well, I mean, I understand that that's a sort of separate question is was there a strategic decision, and that goes to the question of whose burden is it to show whether it was a strategic decision or not. That's a whole separate set of questions. But what I'm just focused on for the moment is as a legal matter, if it had been a strategic decision that I don't want a Batson remedy, I want my jury, you know, if that was the decision, how can that be ineffective assistance? Because, after all, I mean, part of the Batson doctrine is that this violates the rights of the juror, right? But the lawyer does not represent the juror, right? The lawyer has no obligation to protect that person's rights. The lawyer's obligation is to protect his client's rights. Yes, that is true, Your Honor. And to directly answer your question about why this cannot be a legitimate strategy by the lawyer is that the lawyer has to protect his client's rights, but his client's rights were also violated here. And so even if... No, no, no, wait, wait, wait. A lawyer can certainly make a strategic decision, for example, not to make a suppression motion to suppress evidence that was seized in violation of the client's Fourth Amendment rights if the evidence, when it comes in, could actually benefit the defense that was being claimed, right? Yes, Your Honor. There's no freestanding ineffective assistance of counsel claim for failing to object to a ruling by the court that in the abstract is incorrect and violates the client's rights if the choice is, I'm better off not doing that. Well, I think racial discrimination, as the Supreme Court has held over and over and over again, is unique, right? It's unique to the point that the lawyer is obligated to raise any claim that sounds in racial discrimination, even if the lawyer believes that doing so is detrimental to the client's interest in defending this criminal charge. I'm not asking to expand it that far, but I would point... Well, you're asking it for this one, that this particular kind of racial discrimination is so deeply offensive and so deeply harmful to the defendant that counsel is obliged to raise that issue even if what that means is putting a police officer on the jury in a trial that involves shooting police officers, for example. That's a little different than our facts, I recognize. It's not a police officer. It's someone who is hired by the police department to work under the Department of Education, but who has law enforcement responsibility. But let's just simplify it, because I think your argument would go even to the fact that if there was a black police officer and there was a strategic decision, I don't... That... Yeah, go ahead. So two things. The Supreme Court has specifically held that defense counsel may not exercise his own discriminatory, his own perjury strikes in a discriminatory fashion. So I think that directly responds to... No, no, no, it doesn't at all, because there might be things that the defense lawyer cannot do because the defense lawyer is doing something that is unethical or improper. The lawyer does not have a right to, for example, suborn perjury on the part of witnesses in the interest of getting his client acquitted. But does the lawyer... You're saying something different, which is the lawyer has an obligation to object to an unconstitutional action by the prosecutor, even to the detriment of the client's interest in winning the case. No, I don't think I'm saying that. I'm saying that defense counsel here kind of goes back to what I was saying before, which is that the record shows defense counsel did object. I'm not saying that any defense attorney has an obligation to raise a Batson challenge. If for some reason he thinks that a juror might be favorable to his client, I don't think that... He objected to a different exercise of a... discriminatory exercise of a challenge, right? Not to the two people who... He did. He objected to all three. He raised a Batson challenge that was based on the three strikes against black men. The first two of those were Mr. Cardwell and Mr. Johnson, and Mr. Collins was the most recent strike. And then when he was asked whether he wanted those jurors back because the court found that there was racial discrimination against Cardwell and Johnson, defense counsel said, yes, I want them back. And so that is my position, that he wanted those jurors. He was not satisfied with the jury that was left to him. He knew that it was tainted by racial discrimination. The court knew it was tainted by racial discrimination. And it was at that point that I'm relying on George W. McClellan. He knew it was... Yes, but then there's another step, right? Then it turns out that the court decides they can't be brought back as a practical matter. And now what is the remedy that the lawyer should have sought then? Isn't it, let's start all over again? That's one possible option. And one of my arguments is that the district court was wrong below to conclude that that was the only conceivable remedy. And for that reason, the appellate division was not wrong in concluding that this could have been a reasonable strategy because there were other options. In a letter that I recently provided, I cited a brand new appellate division decision from the first department discussing some of the other remedies, which include trying to locate the released jurors, which the court didn't do here, but it could have. It's common practice for jurors to provide their contact information if it was that same day that they had been released. The court would have had the prosecutor forfeit two of their peremptory challenges to make up for the two improperly structures. And if they had done that, Mr. Collins would have, in fact, ended up on the jury, which was the... They were after the selection of alternates, and the first alternate, who would have been Mr. Collins, ended up on the jury. They could have also awarded defense counsel extra peremptory challenges. And so defense counsel ran out of peremptories during the selection of the first alternate, and we don't know if he wanted that juror or not. So there were other options here, but they just didn't explore them because I think maybe it just didn't occur to anyone. But my intuition is that defense counsel had an obligation to think of something, or if he couldn't think of anything else to ask for in this trial, because it is our position that you cannot have PS in a tainted jury. So is there a... I'm also very focused on... Even if we assume de novo review of this ineffective assistance of counsel issue, is there a case where, in the context... And I'm very receptive to the Batson issue, but is there a case where, in the context of a Batson issue, we have stated or some court has stated that the attorney, defense attorney, engaged in some sort of ineffective assistance by not proceeding with or not pushing for a remedy? Is there a case? Yes, Your Honor. That is Dream v. Woods from the Sixth Circuit, where they specifically held that it was... That's the summary order in that case, right? I do not remember off the top of my head. I apologize for that. But they did specifically address this issue. It wasn't even the failure to meet the challenge. The court there, to respond, had represented the Batson violation, and it was defense counsel's failure to object to the inadequate remedy that the Sixth Circuit found to be ineffective assistance. And I'll just add that here, it's even worse, because defense counsel did recognize the problem here, objected to it, succeeded on this motion, and that is... So what it says is any reasonable attorney would have... This is Dream. Would have objected to the trial court's decision to proceed without either recalling those who were dismissed or beginning voir dire again with an entirely new veneer. Is that... Yes. I think those were the remedies that the Sixth Circuit had recognized at that point. But my argument is that New York courts recognized various, a variety of remedies. Could I just briefly add that prejudice should be presumed here? And for the reasons in my brief, unless your Honor has any questions, I just want to emphasize that Lieber does not stand for the proposition that the district court found that Batson does not require automatic reversal. Is there, again, it's a strange position because as a government attorney, I have made Batson challenges that would not have occurred to me that I was being in any way understanding that it's not a Sixth Amendment issue, ineffective not to make the challenge. But is there not a situation, is there any situation where it would be crazy for an attorney, knowing the rest of the potential jurors, it would be crazy for an attorney to ask for a specific remedy. If I know, for example, I've seen what's happened, the Batson challenges to the exclusion of racial, of jurors based on race, but I know that there are in the queue, so to speak, a number of black jurors who are even better than the ones who were the subject of the preemptory challenge. Would that not be a reason, quietly, for me to say nothing and not ask for the remedy if I think that I'm going to be able to get an even better jury? Or is this just the taint itself? Do I have an independent obligation based on the taint of racial prejudice itself to speak up? I'm trying to understand your position, and I think that, Judge Lynch, those questions were also designed to understand precisely what the position is. Are you asking about the distinction between demanding a remedy versus raising the Batson challenge at all? Not only that, the possibility of a remedy was raised, and not only that, your client, Mr. Carew, prevailed on the major part of the case, so he was acquitted, right? So this is a very good attorney, so far as I can tell, and what you want us to focus on is one discreet moment, which is the moment where he has asked, essentially, what would you like? What should I do? He's told that the two black jurors have left the room, and I suppose, based on the New York case that you provided us earlier, that he could have asked for the court to go find those jurors, if at all possible, but they had already left. That's a problem. As you point out, he could also have asked to eliminate the remaining preemptory challenges available to the government and so on, but if he knows that he can actually have a better jury, having made the Batson challenge, but then he realizes, wait a minute. I actually maybe can get a better jury that's not composed of the two black jurors who were dismissed, and not even potentially composed of Mr. Collins, the third jury. Why is that? I think you're asking us to assign, per se, ineffectiveness to that decision, that there's nothing that he, that there must be something he's got to do in order to remedy the situation. I think it's actually a very important distinction to say that I am not asking for a per se rule here, and in fact, what we have illustrates that counsel could not have had that in mind, because at the point he made his Batson motion, the jury had been selected, and so we were actually at the stage of selecting alternates. So this isn't a situation where he raised the challenge early in the proceedings, and there were only a few jurors selected, and he was like, oh, I see a whole bunch of, excuse me, a whole bunch of other people in the audience, in the pool, that could be better, and so it's okay, I'll take my chances and find something better. So Collins was an alternate. Exactly. Collins would have been the first alternate, and he would have actually ended up on the jury because the first alternate ended up ceding that. Why was Collins not the, ceded as the first alternate? I don't understand that. Because it was an argument that this was a discriminatory challenge, but the judge said that wasn't a discriminatory challenge, is that the problem? That's Collins. So Collins isn't in play at all. Right, so my argument is that defense counsel wanted Cardwell, Johnson, and Collins, and had defense counsel asked for the alternate remedy, he could have ended up with Collins. How could he have ended up with Collins, after all, if there was not a discriminatory challenge against Collins, and the government had exercised a legitimate peremptory? If the prosecutor had been asked to forfeit their peremptories as an alternate remedy once Cardwell had been charged. To forfeit their peremptories to the person they had already challenged? I mean, we were at the stage of alternates where they had two peremptories. So they still had another peremptory, and you're saying they could have been required to forfeit both peremptories. I'm saying if you, I mean, the court could have gotten any remedy it wanted, I guess. Well, I'm not sure about any remedy it wanted. About the two jurors who had been dismissed, right? They're called to jury duty, they're summoned to jury service, and then they are told, thank you for your service, you are dismissed. Then they go home. Can you send, like, the sheriff out to drag them back? If they say, wait a minute, I don't have to come back. I was told I was dismissed. Goodbye. Get out of my face. I don't want to serve jury service in the first place. I did my duty. I came in. Can they be, is there something that says they're not really dismissed? I think that's extreme. They weren't sworn in, so I don't know if there's any legal process that could force them back at that point. But I think that— You could have sent the sheriff out to say, if you'd like to come back, you could. That's the remedy? I think the court would have called them. I think the court would have been expected to have their contact information on file. They could have called them the same way the court calls to see if someone doesn't show up for jury service at all. So I think there's that possibility. Do you know what? You know what? So having said that I made about two bats and challengers in two separate cases, the last thing I would want was for jurors to leave, so you keep them there, but challenge jurors to leave and then be blamed for bringing them back. I understand that. So that is a—but it's real. That is a strategic decision. Once those jurors are gone, the last thing that I would have wanted was to have them think, oh, I'm back because of this guy. So why isn't that a strategic decision? Because we have other options. I mean, I'm not saying that's the only option. My point is that the new trial, the new jury, completely wasn't the only option. If counsel was potentially happy with other jurors that had been seated, he also could have asked for extra peremptories for himself. He also could have asked the prosecutor to deduct peremptories. You know, by the way, what would actually work in these situations and what I can— I have never understood why New York State, and indeed some federal judges don't do it, is if you use the system—I'm not even sure what it's called anymore— that I always used as a district judge, which is you impanel as many people as are necessary to cover all the peremptories and the jurors and have each side submit a list of who they object to. Because in that case, you would be able to make a Batson challenge to the first black juror who was challenged because you would now be able to see that it was part of a whole pattern which you cannot see when you're using the traditional method. And so there's only just, well, he was black and he was challenged, and that's not usually enough to get you even an explanation. You know, it's just crazy that the courts don't use a more sensible system overall than the one that has been traditional for no better reason than it's traditional. But that's not, of course, anything you have control over or for that matter that your adversary has any control over. I gather, particularly because I have two great judges on my left who have a lot of experience in the law, and I never even was indicted, so, you know. But it sounds to me like you're dealing with— we're not dealing with the real world here. We're dealing with kind of a technical world in which we're looking to get past all of this so we can get on to habeas, and this is the way you get to habeas. So you're kind of ignoring what really— to put it a different way, it sounds to me like the counsel was perfectly adequate as somebody has already pointed out. The major—he got his client off the major charge against him. So it's almost—I would hate to be in that position, but it's almost as though we're trying to say he was technically inadequate even though he was—I mean, he was— even though, in fact, he was a wonderful lawyer in this case. A little hard to grab my—put my arms around any part of that. So I'm relying on the Supreme Court's decisions that a single egregious error can provide a basis for ineffective assistance of counsel. I don't assume that the defense counsel did anything right here. He did end up securing acquittal for his client on some of the serious charges against him, but the Supreme Court has held both that a single egregious error can be the basis for ineffective assistance and has held again and again and again that racial discrimination against surrogates is a fundamental error and requires automatic reversal law appeal. It is an extremely— So it's technically ineffective assistance of counsel, even though counsel was exceptionally effective. Yes. I mean, I guess I wouldn't describe it as him being technically ineffective. I would say that he made this one very significant mistake. That's how I view it in an otherwise decent performance hearing. And just so that I understand, you want us to get to the underlying habeas issue, which is that that's an issue, but you're also assigning error— asking us to assign error to the district. Fundamentally, you're asking us to assign error to the district court's decision to say that it was not an effective assistance of counsel and therefore the procedural default as determined by the state court is not excused. Is that right? Yes. So really, we don't necessarily— I'm not saying that you're saying this, but we don't necessarily need to address the Batson issue because the district court got it wrong and never got to the Batson issue. So we could just remand for reconsideration of that issue, that is the ineffective assistance of counsel claim. Let it then, if it determines that, in fact, it was an effective assistance of counsel, let it figure out the absence of procedural default, the underlying Batson problem. Is that right? Yes, that's right. You do not have to reach the merits of the Batson claim. I guess I would just ask what they mean. So if you bring it into the district court to reconsider the ineffective assistance of counsel question, it did determine that question, so I guess I'm asking this court to affirmatively find that counsel is ineffective or if it agrees that the district court was incorrect in applying a deference in that context, then I guess it would be appropriate to remand to reconsider it de novo. Right. So we could deal with the question that Tavarez avoided and say, look, actually, district court, your review should be de novo without deference under DEPA. Redo. And that's all that we—I mean, you want more. We could do just that. Sure. Yes. Okay. All right. So you reserve some time for rebuttal. Yes. And we'll hear from your friend on the other side. Thank you. Good morning. May we please the court? Yes. This is Patrick Talcott from the office of Melinda Katz, the district attorney in Queens County. I'm happy to respond. Just initially to pick up what was just said, the district court found under both standards that counsel was ineffective. While it found that this court, although it hasn't yet ruled, should apply a deference, it actually did make a finding on page 15 that the district ineffective argument fails even under de novo review. And as a safe argument and the district court properly found, it's unnecessary to decide, as this court has previously, which standard of review to apply to ineffective assistance of counsel claims that arise in the context of cause of prejudice since the petitioner is unable to establish that he was denying the effective assistance under either standard. Should the court choose to address it, the deferential standard should apply. Under the Supreme Court precedent, a claim of ineffective assistance used as cause must be treated the same as an independent claim of ineffective assistance. Accordingly, it has to satisfy the strict procedural requirements and substantive standards applicable to any claim that advances a basis for habeas relief. One can only succeed on an independent claim of ineffective assistance adjudicated in state court, and we have an adjudication in this case, if one satisfies the deferential standard of review mandated by statute. Therefore, if you're unable to meet the deferential standard, you cannot demonstrate you have a viable and effective assistance claim that could provide relief as an independent constitutional claim in the federal court. Because you can't succeed on an independent claim. May I ask you, because I think it might be a little bit more useful, for me at least, to assume de novo review. Okay. I would just say that the Supreme Court, our argument for deferential review decisions don't support the sudden abandonment of respect for state court decisions when petitioner returns to federal court with the additional burden of a procedural bar. Well, it might be strange, but we have the statute, and the statute says that habeas shall not be granted with respect to any claim that was adjudicated on the merits in the state court adjudication. And I think that Ms. Lynn was suggesting that the claim that they are seeking habeas on is the Batson claim, and the Batson claim was not adjudicated on the merits because it was deemed forfeited. That was deemed forfeited, but the ineffective assistance claim, that was raised in the alternative grounds in the appellate division, and they found that counsel provided meaningful representation and that defendant failed to demonstrate the absence of a strategic or other legitimate explanation of counsel's performance. So that claim was adjudicated on the merits. Right. But now she's saying that, well, that's the adjudication of that claim on the merits, which is different than the adjudication of that claim as a standalone, as a gateway. Right. Because the claim that she's now pressing is only the Batson claim, and the ineffective assistance of counsel ruling is just a stepping stone on the way to that. That's the position. Right. But the New York standard differs. This court deemed it acceptable, so it wasn't contrary to or unreasonable application of Strickland. Nor was it an unreasonable determination in the facts in light of the evidence presented to the appellate division.  Well, I guess Judge Lea's question then remains, assume for the moment that we were doing de novo review, why was the district court correct in saying that on de novo review this claim fails? Because it was clearly a strategic decision on counsel's part. It's virtually unassailable. Now, it's up to the petitioner to establish the absence of it. To establish the opposite of the strategic decision. Which he cannot do, because as the district court found, there's clearly an inference that there was a strategic decision behind counsel's use and that he used Batson actually quite strategically. So point us to that in the record. When you say it's clear that he used Batson quite strategically, where would I look in the record for that? Well, it's inferrable. So he makes the Batson challenge to get the community activist, Mr. Collins, seated. He doesn't even ask for a reason for the first two, but that supports his challenge to Mr. Collins who he wants seated. Now, the judge finds that the reasons for Mr. Collins were acceptable. The court takes it upon itself to ask for reasons for the first two. For the first two. Right. So, again, we have 12 jurors chosen. So now you talk about two jurors. The defendant didn't seem to feel that strongly about it. He didn't even want a reason for them. He didn't object when the prosecutor had challenged them in the first round. So now— Wouldn't that be a ground for ineffectiveness right there? No. What would be the ground for not objecting in the first round? Well, if a judge, Sue Esponte, has determined that there's a Batson violation and I have not picked it up— Oh, no, he brought those up. He did, okay. Yes, yes. He just didn't ask for a specific reason at that time. The judge said he wanted— So he identified the Batson challenge. That's what I thought. Yes, that's right. But, again, he's using it strategically. He really wants his client to receive. That proved unsuccessful because the court found the reasons invalid. So now— But he's got 12 that he likes and he participated. Now he's faced with a choice. And, again, and I think the court has touched upon this, he has a single-minded obligation to his client at this point. And if that meant I want these 12 rather than starting over and picking a new, that is a strategy that's inferrable from the record. And he can't be tapped for that. We may disagree with it, but it doesn't result in the conclusion that he was ineffective. And so, you see, the petitioner can't overcome the first prong of Strickland even under a day-to-day review. You cannot show— So what do we make of that language in Drain? Any reasonable attorney would object to the trial court's decision to proceed without either recalling those who were dismissed or beginning voir dire again with an entirely new veneering. I think a critical distinction with Drain, that's under the backdrop of counsel apparently being completely unaware of what was apparently an egregious facts of issue and then not even participating at all as opposed to here. In other words, you're saying on the facts of Drain, it was reasonable for the court to conclude that any reasonable attorney would have pursued remedies once the thing was pointed out to him that he had failed to notice before. Right. Not only did he not notice it, he didn't even participate after the court raised it itself. So it's a completely different backdrop. Whereas here, again, you had counsel raise it with a clear strategy to get the third juror seated, and he made a strategy to keep the 12 he had participated in choosing. Now, again, whether we agree with that, his only obligation is to his client, and he cannot be forced to make the exchange at his client's detriment. It was just a strategic decision that can't surmount the first prong of Strickland. As to the second prong… Well, if that was the strategy, I suppose Ms. Lynn is suggesting that that couldn't really be the strategy. That may have been the strategy for passing on the first two jurors on the initial occasion. But then once the judge says, well, okay, let's just call those people back, he didn't object to that and say, no, I don't want them. He acquiesced in that, which may undermine the thought that this was all very carefully thought out. And then it turns out they can't be brought back, and Ms. Lynn would say, and he could have then used that as leverage to get some additional peremptories for himself or take away the prosecutor's peremptories, and maybe that would even have been a good way of getting Collins back on the jury because the judge had the power, I suppose, to say, well, because you, the prosecutor, committed a Vatsan violation, I'm going to take away your peremptories at the alternate stage, and we can't get the other guys back. I'm going to take away your peremptories at the alternate stage. And indeed, what the judge really did was to take away the peremptories in a sense because if the two excused jurors had been sitting there, then they would have become the alternates. That was the deal that the judge had in mind or the remedy the judge had in mind. And again, it could have, well, been strategy. You don't want to nail him. You certainly don't want to pull jurors back, as the court pointed out, and have them come back annoyed. Also, again, the evidence knows strong feelings about those initial two. Maybe he didn't want to delay the trial at any point. And at the peremptory stage, at the— It's very hard to figure out all of the possible permutations and combinations here, and I guess your bottom line point is that it's the petitioner's obligation to show that no way, no how could this have been a strategic choice. Exactly. The burden is on the petitioner, and he simply can't meet that. Let me just go back because it is an important unresolved question about whether we should review this portion. In other words, the ineffective assistance of counsel portal de novo or subject that to EBBA deference. And there is a circuit split on this. Judge Lynch mentioned the words of the habeas statute, and I'm just trying to have—I'm having a little bit of a hard time understanding how EBBA deference would apply here if we view the ineffective assistance of counsel issue as a portal, as a way to excuse procedural default, and if the only thing before us is the Batson claim. So could you just take me through that? Well, again, the Supreme Court has made clear, and has spoken directly on that standard of review for ineffective assistance as cause. But if you raise ineffective assistance as cause, it has to be treated the same as an independent claim of ineffective assistance. Therefore, it has to satisfy the strict procedural requirements and substantive standards applicable to any claim, a chance as a basis for habeas relief. But you can only succeed on an independent— What are you reading from? That was from Edwards versus— Okay. Okay. But you can only succeed on an independent claim of ineffective assistance if it is stated in court, if you satisfy the deferential standard of review mandated by 28 U.S.C. 2264. If you can't meet that deferential standard, you can't demonstrate you have a viable ineffective assistance claim. The Supreme Court has said you must. Because you can't succeed on an ineffectiveness claim as an independent claim, it can't suffice as cause. So our argument is the cases just don't support the sudden abandonment of respect for state court decisions when the prosecutor is now returning to federal court with an additional burden of a procedural bar. But again, under either standard, even under a de novo review, you still have the Strickland deference for counsel's performance as well. And as the district court found, it addressed both standards. It addressed that defending can't meet the standard with extra deference, but it also found, even under de novo review, you couldn't establish ineffective assistance so as to overcome the procedural bar. So again, as the state court argued and the district court probably found, it's unnecessary to decide, as this court has done in the past, which standard to review. But if it takes up the question, it should provide what deferential standard should apply. In any event, the defendant cannot meet his burden of establishing ineffective assistance under either standard or review. Okay. Thank you. We'll do a rebuttal. So I'll just briefly, if I may, start with the standards since we didn't talk about it that much. So I would point out that there have been different standards applied in terms of how your Honor referred to it as gateway to reaching the merits claim. That has been applied most recently in Jimenez in the context of actual instance claims where there is a different – where the ECA standard applies to the merits, but there is a lower standard, albeit still very high, to have a gateway hearing on actual instance. And then the Supreme Court has also held that the gateway instance exception applies notwithstanding ECA's newer statute of limitations to an untimely first case petition. And Holland has held, the Supreme Court also, that the statute of limitations from ECA is subject to equitable tolling. And the doctrine of procedural default that we're talking about here, like actual innocence and equitable tolling, predates the passage of ECA. So I think that's significant. And the plain language of the statute here obviously does not discuss to default Edwards, does not say that ECA applies in this context. And just briefly, the question of comedy here, I wanted to note that – The question of what? The question of comedy to the state courts, that is already served by the doctrine of procedural default itself, which asks the federal courts to look at whether the state's procedural rules adequately bar agent's relief. It's served by the adoption requirement. It's served by ECA deference applying to the underlying claim for agent's relief. And in the context of procedural default, I think it's notable that a federal agent's court could determine that a state court misapplies home preservation rules and reach the claim that way, which seems to me an even greater intrusion on state sovereignty than making an independent determination of ineffective assistance of counsel raising the federal claim just to reach the merits claim, which ultimately goes to a question of fundamental fairness, which is the core of agent's relief. And as for drain, I would disagree that it's distinguishable here. The court there expressly said that defense counsel's lack of participation in the Batson challenge was not the reason why counsel was ineffective. It was solely a failure to press for a better remedy because the state's circuit recognized that Batson error must be remedied, and the court's remedy that – the trial court's remedy in that case was simply to require the prosecutor to ask permission before using additional strikes against the law. That's different, but that is different. When you say a Batson error must be remedied, that is different from saying that the defense counsel must remedy it. Actually, if you had told me – if you had argued that the government is obligated then to remedy it or to ask for a remedy, or the court is, then that would make a little bit more sense to me. But sometimes we've got a Batson issue, which is of great importance. That's why it's a structural error. But we also have the Sixth Amendment, and those seem to be in potentially some tension. So why is it incumbent on a – in every case – a defense counsel to do something about it? I don't think you need to make a blanket ruling that in every case, on every factual scenario, defense counsel would be ineffective for not pressing for a remedy. I think on the facts of this case, where the jury was already selected, defense counsel wanted the jurors that he raised in his Batson challenge and then couldn't get them. And then, as Your Honor put it, the court, in effect, did grant the remedy of forfeiting the prosecutor's challenges, and defense counsel didn't even ask to have that enforced because that could have occurred to him to say, okay, well, those jurors can be brought back, should have lost those two challenges, and you can't, and so now you should lose the two peremptory challenges you have for the ultimate juror, which, again, would result in Mr. Collins being seated. And I would also just add that the defense counsel, yes, must consider his client's rights. He's also an officer of the court, and I do think that's important when you're talking about Batson and machine discrimination. And the fact that the court found that he raised the issue, he prevailed upon it, the court agreed, and then at that point, I believe, he was deemed effective for not seeking for that remedy. So do we have to make some determination that there was no strategic reason in this case? Not in any case, but in this case, on these facts, where counsel clearly wanted those jurors and could have asked for a different remedy, even if that was a new trial, but I don't think he even had to go that far. I'm sorry, I didn't mean that. Thank you very much. In my view, this is very well argued. Thank you, Your Honor. Thank you. Thank you. We'll reserve the decision, obviously, as to that. That concludes today's argument.